Good morning. May it please the Court? I am Tanya Whiteleather. I represent appellant plaintiff Crystal Morales. My client, Crystal Morales, is now 24. She cannot hold a job and cannot drive. She's attempting once again to take a class at the local community college in basic math and is failing that. She survives on social security disability. Things should have been different. The basis of our complaint was that the district had failed to comply with child fine for Crystal, which was one of the most significant findings in the order of the administrative law judge in the OAH hearing. Well, one thing that I found difficult about this case is the administrative law judge did award some compensatory relief, correct? Yes, minimal. Well, he did, or she did. She did, yes, she did. She did award some. However... And I really couldn't tell what it was you were really asking for. We'd asked originally... And I still don't understand after reading your brief. I can't figure out what you're asking for. We'd asked for the student, Crystal Morales, to be found to have not obtained a regular high school diploma. She didn't meet the requirements under state law. IDE does not define that. IDEA leaves that to the states to identify. We have that very clearly identified here. The ALJ found she didn't complete classes. The fall semester was waived. She came back after December 6, 2011. So you're asking us to set aside her diploma? Is that what you're... I don't understand the relief that you're seeking. What is it that you want? We'd asked to have the diploma set aside. She didn't comply with what IDEA requires, which is completing regular high school diploma requirements. In the alternative, we looked for violations for the procedural child find, looking towards appropriate issues or procedures that would have been providing protections. She would have been given a transition assessment and a transition plan. She did not receive that from the ALJ. She would have been given prior written notice of the graduation. The transition assessment would have taken place when? Before she was graduated. From the age of 16 on, a student who is receiving an IEP is to receive a transition plan, transition assessment in preparation. If they had an IEP before graduation, they then would have had to do a transition plan. That is correct. I see. They didn't do an IEP. They never did an IEP. My concern here is that you came in with, I assume to be an accurate and pretty dramatic statement of your client's condition. The problem is that the condition results from the accident, not necessarily from what the school district did or did not do. I will confess I had that problem with the entire argument. When you get down to exactly what the alleged deficiency was, I thought the hearings officer pointed to the child find requirement and identified a remedy for that. Perhaps it's the same or overlapping with Judge Pius' concern, is that I simply didn't see the argument as to what was inadequate about the relief given for the deficiency that was found by the hearings officer. Given the deference that's supposed to be given and the district court gave to the hearings officer's determinations, a little adrift as to what it is we're supposed to do with this. I've represented several students with traumatic brain injuries, both at a later stage during high school age and earlier. This is the special education mandated under IDEA addresses all aspects of a student's needs. Academic, speech and language, occupational therapy, counseling if that's related to education, social, transitional, vocational, all of those are part of IDEA. And Crystal, who was on the way to graduate, although she was failing several classes in fall of her senior year, was arguably eventually going to get there. December 6th of 2011, she had this terrible incident, this accident. She no longer was able to do anything that her peers were doing. And under IDEA, should she not have been gifted a high school diploma, she would have been eligible for services until she reached age 22 and aged out. That meant the district could have addressed the occupational therapy, speech and language, emotional, academic needs that she had. The diploma in California is not merely a piece of paper. IDEA did not contemplate that students merely get a pretty piece of paper. She had already passed the high school exit examination. The exit examination is not the only requirement to graduate, I agree. She had passed that. But she needed to learn and be able to understand and to be able to function. And IDEA looks at students, specifically with a transition plan, to say, what are they going to do post-secondary? What do they need? How do we get them there? Into a job? Into a post-secondary school? And that was never done, and that was very clear. We had Dr. Markle go through at hearing and talk about what Crystal needs. She said Crystal didn't have the ability to complete classes, to do schoolwork, after her accident on December 6th that she was struggling. What are you seeking today? A transition service, transition assessment, transition services based upon that assessment. These things should have been very clearly obvious. It was assessed by Dr. Markle or identified by Dr. Markle in her testimony that Crystal needs this, because she can't function following her accident. She needs the help that's available under IDEA, but that was cut off, because instead of possibly being on the stick or responsible through age 22, the district said, oh, no, we're going to waive things. And the ALJ's decision was very clear. She did not complete regular high school diploma requirements. Numbers of things were waived. The grades in fall were simply frozen. She couldn't complete the course of study. She was given a book in her English class, Mr. Johnson testified. Does the relief you're seeking depend upon canceling out the high school diploma? It does not. One of our arguments is that the relief was meager. We didn't have prior written notice, which, of course, cannot be redone. That ship has sailed. We did not have the transition assessment, transition services, and we certainly didn't get the summary of performance that would have been provided to a student graduating, something that Crystal could carry. The transition plan was contingent upon there being an IEP before she graduated? Correct. And the problem is they didn't do an IEP. That is correct. They didn't do an IEP, and there was no transition assessment or plan. As I recall, there was some in the record. What I read, Ms. Morales, was the mother, the mom, was reluctant to have the district do an IEP assessment, or an assessment that goes before the IEP. I'm not familiar with exactly how these things work. The procedure would be an IEP, and at the time a student turns 16, then the transition plan is created. Probably should be created a little earlier, but it's to help the student transition from post-high school. In this particular instance, the mother seemed to be concerned about having her daughter go through too many assessments. And that was the district's tactic in this, to blame the parents. Go ahead, but I understood, as I read the record, and maybe I'm misreading the record, but I thought that the mother, she was going to have an assessment through CHOC, the Children's Hospital of Orange County, and she did not want the school district to do another one at the same time. The district met with her, and that is correct, because the district spoke to her minimally about doing an assessment, did not explain, and did not give her procedural rights. The procedural safeguards document that was given to the parent at ER 19 is for 504. It doesn't mention doing assessments, the requirement to do assessments. It doesn't mention what happens when a student receives a diploma. And the ALJ clearly documented the parent's lack of understanding, even at ER 192, that she was asking about in June, asking what services were available from the district. She didn't understand. And part of it... In June, that e-mail that I read, I seem to suggest that she was then asking for an IEP based on information that had been provided to her back in March, I think it was. The March information was about 504. The document admitted on the record is about 504. It doesn't go through the IDEA special ed procedural rights. When Mother contacted the district in June, she had then talked to an attorney, learned a little bit more about the process, didn't under... The packet is the packet, but it never contained IDEA procedural safeguards to put the parent on notice. She was reluctant to have testing. She notified the district at the early meetings, the SST, student study team, and the 504 meetings, that she was getting assessments through chalk and was not sure where that was going. This is a mother who has two children, she's a single mother, and one has just been lying in the street almost dead. On the section 504 and the deliberate indifference? Yes. How can one say that the school district acted with deliberate indifference when they were in frequent communication with Ms. Morales regarding Crystal's educational needs and undertook efforts, not sufficient in your view, to accommodate Crystal after her accident? How does that constitute deliberate indifference? And this was more than suspected, this was known. Their own nurse documented the day after the accident what had happened, and it verified a severe traumatic brain injury. This young lady was everything but dead. The district knew its duty, they knew that they had to provide an assessment plan and procedural safeguards to the parent. There was a lot of testimony, a lot of discussion. The parent got procedural safeguards. There is no ability to say, look, you had it in front of you, you knew what you should have done. The district had the duty. The district needed to go to the parent and say, here's an assessment plan with procedural safeguards, here's what you need to do, and they didn't. There's a lot of explanation or justification as to why they didn't do it. They were found, the district was found to have violated child find by not taking steps to assess, giving the assessment plan, which would include the procedural rights to the parent. And I know you've said this already, but I would appreciate hearing it again. Your theory, your grounds for expanding or revisiting compensatory relief, sum it up in one sentence. The basis and the relief sought. What was provided to the student as compensatory education for the violation of child find from December 6, 2011 to the date Crystal was allegedly graduated was meager, minimal, insufficient, and did not meet state and federal law. And as a result, she has continued to suffer. And the relief requested is based upon? Based upon the law, based upon what is available to students with IEPs under state and federal law. May I reserve a few minutes? Yes, you can reserve the balance. Thank you. Good morning, Your Honors. May it please the Court. My name is Dan Harbottle, and I represent Newport Mason Unified. Let me begin where you left off, and that is this question about the formulation of potential compensatory ed. And let me read to you a sentence from the Office of Administrative Affairs in February of 2014. The ALJ at that point said, with respect to the record that counsel had placed before her, this is at page ER208. Other than Dr. Markle's recommendation of Fusion Learning Academy, no specific compensatory program was proffered by student, and no further information was provided regarding Fusion. No ITP request, no other comp ed, none of this that has now been mentioned was put before the ALJ. The ALJ, in fact, went so far in that same paragraph as to recite where she actually had to go. She went to the Fusion website itself to determine what kind of programs Fusion provided. None of that information was provided by counsel during the course of the trial. So it is now too late to reconstruct what might have been. You're at the third tier of appellate review of this set of facts and analyses. And the law, having done maybe 30, 40 of these underlying trials, the law is very clear. If you want comp ed, you come prepared to explain what it is and what you want and why you want it. This ALJ went beyond the scope of what she had to do. She went and looked up what Fusion Academy did, and she offered both Fusion Academy, which is the only thing counsel had requested, 40 hours of tutoring. She also, with respect to the transition plan question, offered a vocational assessment for post-graduation vocational training or vocational interests. Which is exactly what an ITP, an individual transition plan, would have done. So what you have here is basically a dearth of any compensatory ed requests four years ago, five years ago at the underlying hearing, and a continuation of claims that additional comp ed ought to have been given when none was requested initially at the very beginning, when it mattered. So the ALJ went beyond what she needed to do, and the district court judge certainly didn't need to go beyond what the ALJ had done. Did the student have any procedural rights here? Yes, and I'm glad you mentioned that, because I don't understand why this is, but the persistent claim that she didn't have the special ed procedural rights is demonstrably false. It's been proven, the ALJ explicitly found, that while Ms. Morales claimed during the course of the due process trial that she had not received those rights, that she later admitted she had, in fact, received those rights on June 12th, when she emailed the district saying, I still have the packet that you gave me back in March. That packet back in March, there's contemporaneous written documentation, it's SER 98, that the district gave the special ed procedural rights to the parent on March 20, 2012. So there's no, it's simply just demonstrably false that she didn't have those rights. That's the mother, but how about the child? When she turned 18, what happened then? Well, that argument also was waived. The ALJ placed very clearly in the record that at ER 203 in the OEH decision, that that matter did not come up during the underlying case. So very clearly, those things that were not raised at the ALJ level cannot be raised at the district court level on an IDEA appeal. So it was never argued below. It was never raised, and she turned 18 in May. And by the way, I don't remember which email, if you specified which one, but... The June one. The June one, there were several in June, but the June 20 email is the one that I would focus most of your attention on. And that's because that is an email from Ms. Morales, who specifically says, yesterday, two days before graduation, this email is coming one day before diploma granting and graduation ceremony. Yesterday, Crystal and I sat down and talked about what we want to do. What we want to do. We want a diploma, and we want to walk into graduation. What do we need to get the diploma? We want to go in and do the video project with Mr. Johnson. Can we do that and still have account for her diploma? The answer was yes, it could, and they did, and the evidence is clear that they did. On the diploma question, my understanding is that you say, correct me if I'm wrong, that Crystal received a regular high school diploma. So what I don't quite understand is that given the accommodations and waivers that she received, how can one describe this as a regular high school diploma? Because the standards were met, according to the ALJ herself, which was not overturned by the district court, at page 193 of the administrative record, the ER, excuse me, the excerpts of record, those administrative waivers were proper, which means, for example, let me give you an example that's probably the best and clearest example. If a student moves into a district in the second year of a four-year high school program, typically a 40-hour community service obligation exists. The student's not been there for two years. That is a district requirement, 40 hours. But if a student moves in after their sophomore year, they only require 20. So the argument there would be, if you follow the logic counseled against you, is that that student did not receive a regular high school diploma because 20 hours of community service were waived. That's an absurd result. Same with everything else. The humanities waiver, that was simply a substitution of a class that that year did not count for humanities, but would the next year. And by the way, Crystal had applied for and not been permitted to take the class that would have satisfied it because it was full. So as a normal standard operating procedure within a school district, they thought, well, we would give this to anyone, so let's give it to her. So she didn't complete the photography class, but she completed ROP visual imagery, and that satisfied the requirement. There was such a diversity of testimony at the due process hearing, and I want to point out that this is not blaming anyone, but Ms. Morales' testimony was deemed to be wildly contradictory to the other evidence, to all other evidence. But when it mattered, when she was solo speaking on her behalf and Crystal's behalf in May of 2012, she wrote a letter to the district nominating Mr. Murray, the teacher who had seen her through this whole scenario, as teacher of the year, or something to that effect. And just that in itself isn't the key thing. The key thing is what she said in that letter, because it belies all of the other argument that you're hearing here. Mr. Murray took it upon himself to meet with all of Crystal's teachers to customize a lesson plan that realistically she could complete. Weekly meetings with her, Ms. Morales and Crystal. I'm reading right from the letter. Special project that she was assigned. I know that he gave her the strength and inspiration she needed to move forward and finish high school. So I understand the buyer's remorse question, but Ms. Morales was an integral participant in Crystal obtaining... Is it the district's position that she waived any right to an IEP hearing? Or assessment? No, because we gave it to her, but the request was made... So as I understand it, if she had had an IEP in place before she graduated, she would have been eligible for services after graduation. That's incorrect. Let me clarify. I understand where that comes from. The law says even if you have an IEP, even if you have an ITP, a transition plan, even if you have all these other things, if you get a regular high school diploma, she could have been eligible for special ed since she was three and had an IEP for 15 years before that. In each case, no violations of any rights. She'd still, if she was eligible and met the requirements, receive a regular high school diploma, and her services would stop. So in this case, if Ms. Morales... What if the transition plan contemplated that she would need some services after graduation? They're not available? That's why the vocational assessment was ordered by the ALJ, because I think she recognized that one potential effect of the flaws that she found in the district's programming or the district's actions was that she could benefit from a vocational assessment. Well, that's not my... If there had been a transitional plan in place before she graduated that said student needs X, Y, and Z services, is the district obligated to provide those services? That wouldn't be what a transition plan does. A transition plan would say, in order to transition to post-secondary, here's what she wants to do. She wants to go to community college. She wants to study veterinary science. She wants to do X, Y, and Z. The reason I'm tying the transition to the vocational is that those two things are very closely related to each other. So any claim that we violated her rights by not giving her a transition plan were remedied by the vocational assessment and whatever happened as a result of that vocational assessment. So I think... I'm still trying to understand. I'm not sure you've answered my question completely, although you seem to suggest that the school district's obligation ends. Over. We're finished with this student. Well, the ALJ seemed to say something different. The ALJ said in so many words that a student graduating from high school does not cut off the school district's obligation to remedy its past failure to offer a FAPE. No, she did say, she specifically said under the statute that once the education, once the regular high school diploma is awarded, then special education rights terminate. There's a clear... Perspective rights. The question here I think is being raised, was there a... And indeed, the ALJ did award something in the future. Yeah, right, and that's perfectly fine, but it's based on past alleged failures. So to follow your lead... If she had gotten an IEP, if mom had permitted the district to assess in March of 2012, and by the way, there's a very clear recitation of the district absolutely offered to assess, you just didn't hand her the single page assessment plan. If she, mom, had permitted assessment at that point, the district has 60 days, not counting big breaks, to complete the assessment and do the IEP. That would have been about three weeks prior to graduation. That would have put her about three weeks prior to graduation. She would have had an IEP, and all of that same time, the same 60 days that passed under these facts, we would have been doing exactly the same thing. Working, Mr. Murray working with her, as mom set forth in that letter, making clear that she was going to proceed and finish. And then the IEP would have been held, and she would have graduated with a regular high school diploma, and her IEP rights, her IDEA special ed rights would have terminated at that point. I have a question again about the remedies. Can you help me understand, what are the other potential remedies that might have been ordered, but which weren't? I don't know the answer to that, because nothing was ever requested. That would really be a plaintiff-slash-appellant point, which, as I pointed out, and the district judge made the same point, that those were not raised at the appropriate time. For the only procedural violation that was found against the district, which was not handing Ms. Morales a piece of paper on March 23, 2012, as opposed to actually just orally engaging in this question, and being turned down because Ms. Morales was in the middle of the chalk assessment. Other than that, failure to hand a piece of paper over to Ms. Morales, there was no flaw found by the ALJ, no flaw found by the district court. So our view is that not only did the ALJ do the right thing in terms of proper remedies, she went above and beyond by investigating herself what potential remedies she might offer. That person, she was the person, having sat through four days of trial and having read all the records, that would have been in the proper position and was in the proper position to develop a remedy for this student, and she did that. There shouldn't be any second guessing at this level, six years, I think we're, we're seven years past the point. Okay. Thank you. Thank you, Your Honors. SER 98 is not a document that was provided, procedural rights and safeguards. It's an entry saying had a meeting with the parent. There was no evidence at the hearing or ever after that the district had ever provided anything other than the 504 procedural rights. I want to be very clear, transition is a whole field. It involves vocation. Vocation is one aspect of a transition assessment and a transition plan. Job is one thing that a student will be doing. What do you have to say about the specific reference by the ALJ that nothing was presented other than this proposal for fusion learning academy? And that was what the ALJ awarded. That is not quite right, because Dr. Markle went through and identified her needs, including a need in the area of transition vocational. Our request, our remedy at hearing was to void the high school diploma, because she had not complied with what IDEA stated and what the state law very clearly prescribed as completing the course of study. And again, the ALJ found she didn't complete the course of study. It just got waived, but said incorrectly that the district can waive everything, which sets up a terrible precedent for this young lady. We requested, we were looking at voiding a high school diploma that she had not earned, which OAH has done in the past. They have voided a few diplomas. We were told no. Had that been voided, we would have been looking to all the procedural requirements and substantive requirements of IDEA and state law. It was discussed and briefed in the district court appeal, talking about procedures, specifically the lack of procedural prior written notice, transition plan and the SOP. And I see that my time is out. May I take a minute more? You have one minute. Okay. Thank you. The parent did not, this is again, this is the blame, giving Mr. Murray a nomination was she's a good lady. She didn't know IDEA and we can't blame the parent in this. It's just not what the law requires. The transition plan was never provided and it was very, very necessary. We have a young lady who was never given services she should have gotten had she not been kicked out of the system. Thank you.
judges: Paez, Clifton, Katzmann